United States District Court
Middle District of Florida
Jacksonville Division

**BRADLEY SULLIVAN,**

*Plaintiff,*

V.                                                          **NO. 3:17-CV-1387-J-32PDB**

**NATIONAL GENERAL INSURANCE ONLINE, INC.,**

*Defendant.*

---

# Report and Recommendation

Bradley Sullivan is suing National General Insurance Online, Inc.—his car insurer—claiming (1) uninsured motorist ("UM") coverage for alleged damages from a 2014 accident and (2) bad faith under Fla. Stat. § 624.155. Doc. 2. Before the Court is his motion to remand under 28 U.S.C. § 1447(c) based on two asserted procedural defects: (1) an untimely notice of removal and (2) waiver through active state litigation. Doc. 13. National opposes remand. Doc. 14. The Court referred the motion for a report and recommendation. Doc. 21. Mediation is scheduled for May 23, 2018, and trial for the April 2019 term. Docs. 23, 25.

## Background

These events occurred in 2017. They are undisputed.

On March 21, Sullivan filed a "Civil Remedy Notice of Insurer Violations" under Fla. Stat. § 624.155 against National.[1] Doc. 13-1. He cited a UM coverage

---

[1] Section 624.155 creates a statutory cause of action for a first-party bad faith claim by an insured against an insurer. Advance notification to the insurer is a prerequisite to bringing the cause of action. Fla. Stat. § 624.155(3)(a).

provision of a policy with National; described the accident (a collision with the rear of his car); alleged car damage (totaled); alleged injuries (immediate neck pain, back pain, thigh pain, spasms, headache, and dizziness; continuing lower back pain radiating down his right leg and hip; and various spinal diagnoses); and alleged damages ($36,000 in medical bills; the cost of ongoing medical treatment expected to be between $5,000 and $10,000 for two to three years; unspecified damages from inability to do his job in the construction industry; and unspecified damages from pain and suffering). Doc. 13-1 at 2–4. He explained National had rejected many offers to settle for the policy limit of $100,000. Doc. 13-1 at 4–5.

On August 7, Sullivan filed the complaint in state court, together with interrogatories and requests for production. Doc. 1-2 at 1–2.

The complaint begins, "This is an action for damages in excess of … $15,000 …, exclusive of interest and costs," and, "At all times material hereto, Plaintiff was and is a resident of Duval County, Florida." Doc. 2 ¶¶ 1, 2. For the UM coverage claim, besides generally describing the collision, alleging negligence of the other driver, stating the policy number, and observing that the policy contains a UM provision, Doc. 2 ¶¶ 8–11, Sullivan alleges he meets the threshold in Fla. Stat. § 627.737(2),[2]

---

[2]Section 627.737(2) provides:

(2) In any action of tort brought against the owner, registrant, operator, or occupant of a motor vehicle with respect to which security has been provided as required by ss. 627.730-627.7405, or against any person or organization legally responsible for her or his acts or omissions, a plaintiff may recover damages in tort for pain, suffering, mental anguish, and inconvenience because of bodily injury, sickness, or disease arising out of the ownership, maintenance, operation, or use of such motor vehicle only in the event that the injury or disease consists in whole or in part of:

(a) Significant and permanent loss of an important bodily function.

(b) Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement.

2

including suffering a "permanent injury within a reasonable degree of medical probability," and

> [a]s a direct and proximate result of the motor vehicle collision, [he] suffered bodily injury and resulting pain and suffering, inconvenience, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of the ability to earn money, aggravation of a previously existing condition and/or activation of the latent disease or physical defect. The injuries and losses are either permanent or continuing in nature and plaintiff will suffer said injuries and losses in the future.

Doc. 2 ¶¶ 12–13.

For the UM coverage claim, Sullivan "demands … the total damages suffered by [him], for the full amount of UM damages under the policy," together with interest, attorney's fees, and costs. Doc. 2 at 3–4. For the bad-faith claim, Sullivan references the "Civil Remedy Notice of Insurer Violations." Doc. 2 ¶ 21. He alleges breaches of statutory obligations to him as an insured and demands interest, attorney's fees, and costs. Doc. 2 at 6. The interrogatories are not in the record in state court or this Court. The request for production sought copies of all policies providing coverage, photographs of the accident, Sullivan's medical records and bills, reports from any medical provider concerning Sullivan's condition, any tangible evidence for the case, estimates for car damage, and every statement Sullivan had made to any National agent or representative. Doc. 1-2 at 7–8.

On August 15, Sullivan served National with the complaint and the discovery. Doc. 1-2 at 2, 9, 11–12.

---

(c) Significant and permanent scarring or disfigurement.

(d) Death.

Fla. Stat. § 627.737(2).

3

On October 11, following a motion for clerk's entry of default, National filed an answer and affirmative defenses to the uninsured-motorist-coverage claim and a motion to dismiss the bad-faith claim.[3] Doc. 1-2 at 2. On the same day, National served Sullivan with a request for admissions. Doc. 1-2 at 2, 15–16. National asked him to admit or deny these statements:

1. At all times relevant to the accident …, Plaintiff was and is a resident of the State of Florida.

2. At all times relevant to the accident …, Plaintiff intended and intends to remain living in the State of Florida.

3. At all times relevant to the accident …, Plaintiff was and is not a resident of the State of Missouri.

4. At this time, Plaintiff has incurred … $75,000 … or more in past economic damages (including, but not limited to, past medical expenses and past lost wages) which he relates to the accident …, without regard to any setoffs or present-value reductions.

5. In total, Plaintiff seeks … $75,000 … or more in this lawsuit, without regard to any setoffs or present-value reductions, and exclusive of interest and costs.

6. The total value of Plaintiff's claims in this lawsuit is equal to or greater than … $75,000 …, without regard to any set-offs or present-value reductions, and exclusive of interest and costs.

7. Plaintiff's own assessment of the monetary value of his case is … $75,000 … or more, without regard to any setoffs or present-value reductions, and exclusive of interest and costs.

Doc. 1-2 at 15–16.

On October 27, Sullivan's counsel served National a "Notice of Special Set Hearing" in which counsel notified National that he would present National's motion

---

[3]The state-court clerk never entered default, *see generally* Doc. 1-2, and the parties agreed in this Court that National's appearance rendered the motion moot, Doc. 18.

to dismiss the bad-faith claim to the circuit judge at a hearing specially set on November 9. Doc. 1-2 at 18.

On November 15, Sullivan served National with a response to the request for admissions in which he admitted all of the statements. Doc. 1-2 at 3, 20–21.

On November 16, the state court denied the motion to dismiss the bad-faith claim and ordered the claim abated[4] pending the issue of UM coverage.[5] Doc. 8.

On December 12, citing the admissions, National filed in this Court a notice of removal under 28 U.S.C. §§ 1441 and 1446 based on diversity jurisdiction under 28 U.S.C. § 1332. Docs. 1, 1-2. The notice provides, "With respect to his citizenship, [Sullivan] admitted that he is a resident of the State of Florida, that he intends to remain living in the State of Florida, and that he is not a resident of the State of Missouri." Doc. 1 ¶ 6. The notice further provides, "With respect to the amount in controversy, [Sullivan] admitted that he 'seeks … $75,000 … or more,'" that "'the total value of [his] claims in this lawsuit is equal or greater [than] … $75,000[]' … and that his 'own assessment of the monetary value of his case is … $75,000 … or more.'" Doc. 1 ¶ 7.

On December 21, Sullivan filed the motion for remand now before the Court. Doc. 13. He attaches the "Civil Remedy Notice of Insurer Violations" and the complaint. Docs. 13-1, 13-2.

Sullivan argues National was notified he was seeking more than $75,000 as early as March 21, 2017, when National received the "Civil Remedy Notice of Insurer

---

[4]The Florida Supreme Court has cautioned "that where … coverage and bad faith actions are initiated simultaneously, the courts should employ existing tools, such as abatement of actions …, to ensure full and fair discovery in both causes of action." *Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121, 1130 (Fla. 2005).

[5]The state court's order is dated November 16, 2017. Doc. 8. The order was placed on the state court docket on November 17, 2017. Doc. 1-2 at 3.

Violations" repeatedly demanding $100,000. Doc. 13 at 4–5. He argues National again was notified that he was seeking more than $75,000 in August 2017 when he filed the complaint demanding the full amount of UM damages under the policy. Doc. 13 at 5. He argues, "Likewise, Defendant had knowledge at all times that Plaintiff was a citizen of Florida through multiple pieces of correspondence with Plaintiff as well as public record." Doc. 13 at 5. (He does not identify the correspondence or public record. *See generally* Doc. 13.) He adds, "Plaintiff has been transparent and specific with Defendant, always maintaining the amount of damages incurred[.]" Doc. 13 at 7.

Sullivan also argues National's actions in state court after receipt of the "Civil Remedy Notice of Insurer Violations" and service of the complaint (filing the answer and motion to dismiss, appearing at the hearing on the motion to dismiss, and serving and receiving discovery) operate as a waiver. Doc. 13 at 8–9. He contends, "Such actions indicate [National]'s desire to litigate in state court[.]" Doc. 13 at 9.

National responds that information received before a lawsuit is filed does not trigger the time for filing a notice of removal if the complaint does not affirmatively establish removability. Doc. 14 at 3–4. National observes the complaint did not explicitly state Sullivan was seeking more than $75,000 and argues National would have been forced to guess the action's removability if relying solely on the complaint. Doc. 14 at 4. National contends it used the preferred method of directing early discovery at citizenship and amount in controversy to avoid premature removal on an equivocal record. Doc. 14 at 3–4. National adds the "Civil Remedy Notice of Insurer Violations" does not support that Sullivan's claim exceeded $75,000 because the only amounts specified total $66,000 and the demand for the $100,000 policy limit "can only be interpreted as posturing and puffing." Doc. 14 at 5. National does not respond to the waiver argument. *See generally* Doc. 14.

**Law & Analysis**

28 U.S.C. § 1441 permits a defendant to remove a case in state court to federal court if the federal court has diversity jurisdiction under 28 U.S.C. § 1332. A court has diversity jurisdiction under § 1332 if the parties are citizens of different states and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). For a natural adult, citizenship means domicile; mere residency is insufficient. *Mollinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1341–42 (11th Cir. 2011). Domicile requires residence in a state and an intent to remain there. *Id.*

If a case is originally filed in federal court, diversity jurisdiction is determined based on citizenship and amount in controversy when the initial complaint is filed. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003). If a case is originally filed in state court, diversity jurisdiction is determined based on citizenship and amount in controversy both when the state case is initiated and when the case is removed.[6] *Kinney v. Columbia Savings & Loan Ass'n*, 191 U.S. 78, 81, 83 (1903); *Stevens v. Nichols*, 130 U.S. 230, 231 (1889); *Kellam v. Keith*, 144 U.S. 568, 569 (1892); *Texas Wool & Mohair Mkt. Ass'n v. Std. Acc. Ins. Co.*, 175 F.2d 835, 838 (5th Cir. 1949).[7]

---

[6]"The purpose of requiring diversity to exist at both times … is to prevent a non-diverse defendant from acquiring a new domicile after commencement of the state court suit and then removing on the basis of the newly created diversity of citizenship." 14B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 3723 at 311–12 (4th ed. 2013); *accord Gibson v. Bruce*, 108 U.S. 561, 563 (1883).

[7]Although when the case is initiated and when the case is removed are both pertinent times for considering jurisdictional facts, courts sometimes consider only one or the other. *See, e.g., PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1306 (11th Cir. 2016) ("[D]iversity jurisdiction is determined at the time of filing the complaint or, if the case has been removed, at the time of removal."); *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1239–40 (11th Cir. 2005) (assessing citizenship at the time the state case was initiated to decide if removal was proper); *Roecker v. United*

28 U.S.C. § 1446 governs removal procedure, which is not jurisdictional.[8] *Moore v. North Am. Sports, Inc.*, 623 F.3d 1325, 1329 (11th Cir. 2010). A defendant who wants to remove a case from state court to federal court must timely file in the federal court a notice of removal signed under Federal Rule of Civil Procedure 11 and "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). If challenged, a defendant must prove the jurisdictional basis for removal by a preponderance of the evidence. *Williams v. Best Buy Co.,* 269 F.3d 1316, 1319 (11th Cir. 2001). The defendant may rely on a "wide range of evidence," including complaint allegations, other admissions by the plaintiff, unsworn letters, and affidavits. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754–55, 768 (11th Cir. 2010). The defendant also may use "reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Id.* at 754. The failure to establish diversity jurisdiction at the time of removal is a procedural rather than jurisdictional defect. *Corp. Mgmt. Advisors, Inc. v. Artjen Complexus, Inc.*, 561 F.3d 1294, 1296 (11th Cir. 2009).

28 U.S.C. § 1447 authorizes a plaintiff to seek remand of a removed case based on a jurisdictional or procedural defect and permits a court to order payment of attorney's fees and costs incurred because of removal.[9] A court generally may do so

---

*States*, 379 F.2d 400, 407 (5th Cir. 1967) ("In order for a case to be removable on the ground of diversity, diversity must exist at the time the state action is commenced.").

[8]The Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. 112–63, 125 Stat. 758 (Dec. 7, 2011), amended section 1446 effective January 6, 2012, and applies to cases commenced after that date. *See* Pub. L. 112–63. Because Sullivan filed the complaint in 2016, the amended version applies. For the issues here, reliance on pre-amendment cases is warranted because the pertinent provisions have not materially changed.

[9]For a procedural defect, a plaintiff must move to remand within 30 days of the defendant's filing of the notice of removal. 28 U.S.C. § 1447(c). Here, Sullivan timely filed the motion to remand. *See* Doc. 1 (notice of removal filed on December 12, 2017); Doc. 13 (motion to remand filed on December 21, 2017).

only if "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).[10]

Congress created removal to protect defendants. *Pretka*, 608 F.3d at 766. Although a court must construe the removal statutes narrowly and resolve any doubt against removal, *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996), a court must be "equally vigilant" in protecting the right to proceed in federal court as it is in permitting a state court to retain its jurisdiction, *Pretka*, 608 F.3d at 766.

Even if a court has subject matter jurisdiction over a removed case, remand is warranted if the defendant filed its notice of removal too late. 28 U.S.C. § 1447(c). Section 1446(b) has two primary subsections governing removal timing: (b)(1) and (b)(3). *Pretka*, 608 F.3d at 756−58. They serve to "encourage expeditious removals from state to federal court" to "avoid the evils of the delay necessarily attendant upon the change of forum." *Id.* at 767 (internal quotation marks omitted). "[T]he traditional understanding was that removal was both permitted *and required* 'as soon as the action assumes the shape of a removable case.'" *Id.* at 760 (*quoting Powers v. Chesapeake & Ohio Ry. Co.*, 169 U.S. 92, 101 (1898); emphasis in *Pretka*). "Otherwise, a defendant could wait and see how it fared in the state court proceedings before deciding whether to remove." *Id.*

Subsection (b)(1) governs a case removable at the outset:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then

---

[10]A remand order is not ordinarily reviewable. 28 U.S.C. § 1447(d). An exception applies to class actions. 28 U.S.C. § 1453(c). As a result, appellate decisions on removal usually involve class actions. *See, e.g., Pretka*, 608 F.3d at 752. Sections 1446 and 1447 apply to removals of class actions and non-class actions alike (with an exception not applicable here). 28 U.S.C. § 1453(b) & (c). Those cases apply equally to non-class actions like this case.

9

been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1).

Subsection (b)(3) governs if the case "stated by the initial pleading is not removable":

> Except as provided in subsection (c) [prohibiting removal based on diversity jurisdiction under (b)(3) more than one year after the case began unless the plaintiff acted in bad faith to prevent removal], if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3). Through a 2011 amendment, *see* footnote 7, Congress added: "If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under subsection (b)(3)." 28 U.S.C. § 1446(c)(3)(A).[11] Even before the amendment, the Eleventh Circuit suggested that "other paper" could include discovery responses. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1212 n.62 (11th Cir. 2007).

Every court of appeals that has addressed whether a court may consider a defendant's pre-litigation knowledge or post-litigation knowledge from a source other than the plaintiff to decide triggering of the 30-day removal period has held no. *See Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 283–84 (6th Cir. 2016); *Romulus v.*

---

[11]Through the 2011 amendment, *see* footnote 7, Congress also designated what had been two unnumbered paragraphs in subsection (b) as (b)(1) and (b)(3). Pub. L. No. 112-63, 125 Stat. 758 (Dec. 7, 2011). Pre-amendment cases refer to newly renumbered subsection (b)(1) as the "first paragraph" in subsection (b) and newly renumbered subsection (b)(3) as the "second paragraph" in subsection (b). *See, e.g., Pretka*, 608 F.3d at 756−68.

*CVS Pharm., Inc.*, 770 F.3d 67, 74−75 (1st Cir. 2014); *Cutrone v. Mortg. Elec. Reg. Sys., Inc.*, 749 F.3d 137, 143 (2d Cir. 2014); *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013); *Mumfrey v. CVS Pharm., Inc.*, 719 F.3d 392, 399 (5th Cir. 2013); *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139, 1141 (9th Cir. 2013); *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 974 (8th Cir. 2011); *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1077 (10th Cir. 1999); *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997); *Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 986 F.2d 48, 53−54 (3d Cir. 1993) (*overruled on other grounds by Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999)). Those courts have adopted a bright-line rule under which a court—to decide the triggering of the 30-day removal period—may look only at the pleading or any post-litigation "other paper," 28 U.S.C. § 1446(b)(3), from the plaintiff.

The bright-line rule is based on the language of subsection (b)(3) ("if the case *stated by the initial pleading* is not removable, a notice of removal may be filed within 30 days *after receipt by the defendant*, through service or otherwise, of a copy of an amended pleading, motion, order or other paper *from which it may first be ascertained* that the case is one which is or has become removable") (emphasis added). "It is axiomatic that a case cannot be removed before its inception. If the … paragraph … were meant to include as 'other paper' a document received by the defendant months before receipt of the initial pleading, the requirement that the notice of removal 'be filed within thirty days after receipt by the defendant' of the 'other paper' would be nonsensical." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010).

The bright-line rule is also based on a desire to promote judicial efficiency through avoidance of mini trials about what defendants had known or should have known based on facts it possessed when it received the pleading or other paper and premature removals by risk-averse defendants fearing accidental closure of the 30-day removal period. *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992).

The bright-line rule is further based on a desire to "discourage[] evasive or ambiguous statements by plaintiffs in their pleadings and other litigation papers." *Walker*, 727 F.3d at 824. "If plaintiffs think that their action may be removable and think, further, that the defendant might delay filing a notice of removal until a strategically advantageous moment, they need only provide to the defendant a document from which removability may be ascertained." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013).

The bright-line rule is usually stated in strict terms: the triggering pleading or other paper must provide "specific and unambiguous notice that the case satisfies federal jurisdictional requirements." *Walker*, 727 F.3d at 825. Courts agree that "a plaintiff's pleading or later paper will trigger the deadlines in Section 1446(b) if [it] includes a clear statement of the damages sought or if the plaintiff's paper sets forth sufficient facts from which the amount in controversy can easily be ascertained by the defendant by simple calculation" while emphasizing that the defendant "has no duty … to investigate or to supply facts outside of those provided by the plaintiff." *Romulus*, 770 F.3d at 75.

The bright-line rule is distinct from the rule that a defendant may remove a case under subsection (b)(1) based on diversity jurisdiction if the amount in controversy is facially apparent from the complaint. *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061, 1066 (11th Cir. 2010) (holding a defendant may remove a case based on diversity jurisdiction if the complaint does not expressly seek damages exceeding $75,000 but it is otherwise "'facially apparent' from the pleading itself that the amount in controversy exceeds the jurisdictional minimum"). The bright-line rule applies to timing disputes; the other rule applies to amount-in-controversy disputes. *Mumfrey*, 719 F.3d at 400. "Whether the jurisdictional prerequisites are in fact met is a separate determination and often involves consideration of materials outside the state-court pleadings. … In contrast, the timeliness inquiry is limited to examining contents of the clock-triggering pleading or other litigation paper; the question is

whether *that document*, on its face or in combination with earlier-filed pleadings, provides specific and unambiguous notice that the case satisfies federal jurisdictional requirements and therefore is removable." *Walker*, 727 F.3d at 825 (emphasis in original).

In accordance with the courts of appeals that have adopted the bright-line rule, this Court has repeatedly applied it. *See, e.g., Clark v. Unum Life Ins. Co. of Amer.*, 95 F. Supp. 3d 1335, 1354 (M.D. Fla. 2015); *Stephenson v. Amica Mut. Ins. Co.*, No. 6:14-cv-978-Orl-37KRS, 2014 WL 4162781, at *2 (M.D. Fla. Aug. 21, 2014) (unpublished); *Benstock v. Arrowood Indem. Co.*, No. 8:11-cv-2493-T-23TGW, 2011 WL 6314236, at *1–2 (M.D. Fla. Dec. 16, 2011) (unpublished); *Village Square Condo. of Orlando, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 6:09-cv-1711-Orl-31DAB, 2009 WL 4855700, at *4 (M.D. Fla. Dec. 10, 2009) (unpublished); *Armstrong v. Sears, Roebuck & Co.*, No. 8:09-cv-2297-T-23TGW, 2009 WL 4015563, at *1 (M.D. Fla. Nov. 19, 2009) (unpublished); *Del Rio v. Scottsdale Ins. Co.*, No. 605CV1429-Orl-19JGG, 2005 WL 3093434, at *3 (M.D. Fla. Nov. 18, 2005) (unpublished). *But see Lee v. Altamil Corp.*, 457 F. Supp. 979, 981 (M.D. Fla. 1978), *and Hirtreiter v. K Mart Corp.*, No. 8:08-cv-872-T-27MSS, 2008 WL 11335130, at *1 (M.D. Fla. June 6, 2008) (unpublished).

Here, to decide the triggering of the 30-day removal period, Sullivan asks the Court to look beyond the complaint and admissions to the pre-litigation March 21, 2017, "Civil Remedy Notice of Insurer Violations" that National presumably possessed all along. Doc. 13 at 4–5. But he has provided no reason to forgo the bright-line rule, and no reason is apparent. The rule should be followed because it is based on the plain language of subsection (b)(3) and sound judicial policy (promotion of judicial efficiency through avoidance of mini trials and premature removals and discouragement of pleading ambiguity), as ten circuit courts of appeals and many decisions from this Court have recognized. The two non-binding cases on which Sullivan relies—*Lee*, 457 F. Supp. 979, and *Hirtreiter*, 2008 WL 11335130—are

unpersuasive because they precede much of the overwhelming authority on the bright-line rule and neither mention nor apply the rule.[12]

Applying the bright-line rule to decide the triggering of the 30-day removal period, the "Civil Remedy Notice of Insurer Violations" must be disregarded as a paper mailed five months before initiation of the state case, and only the complaint served on August 15, 2017, and admissions served by Sullivan on November 15, 2017, considered. If the complaint establishes a basis for removal, the notice of removal filed on December 12—almost four months after service of the complaint—is untimely.

For two reasons, the complaint does not establish a basis for removal.

First, the complaint does not affirmatively and unambiguously establish Sullivan was a citizen of Florida when the state case was initiated. Instead, in the complaint, he alleges only his residency. *See* Doc. 2 ¶ 2 ("At all times material hereto, [Sullivan] was and is a resident of Duval County, Florida."). Because citizenship requires residence and an intent to remain, *Mollinos*, 633 F.3d at 1342, the complaint does not establish his citizenship. *See Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 696 (9th Cir. 2005) (holding a complaint did not trigger the 30-day removal period because the complaint revealed only the plaintiff's residency). Second, the complaint does not affirmatively and unambiguously establish that the amount in controversy exceeds $75,000. Instead, the complaint states this is a case for damages exceeding $15,000 and describes injuries and damages without specifying an amount.

---

[12]In *Lee*, this Court held "any reasonable reading of the complaint would indicate that the amount in controversy exceeds [the jurisdictional threshold]" because although it included no specific amount, it included allegations of serious permanent injury, substantial medical expenses, great pain and suffering, and substantial loss of income. 457 F. Supp. at 981. In *Hirtreiter*, this Court held the defendant had "unambiguous, actual knowledge" the amount in controversy exceeded $75,000 when the complaint was filed because the complaint referenced the defendant's pre-litigation bankruptcy proceeding in which the plaintiff sought $1.5 million in damages based on the same claim. 2008 WL 11335130, at *1.

*See generally* Doc. 2. Although the complaint references the policy by number and demands "the full amount of UM damages under the policy," Doc. 2 at 3, the demand—besides providing no figure and thus requiring National to gather and review the policy—is unclear on whether Sullivan seeks the full amount of his alleged unspecified damages under the UM provision or the limits of UM coverage under the policy. National had no duty to supply facts Sullivan did not provide in the complaint or try on its own to resolve the ambiguity of his demand.[13] *Romulus*, 770 F.3d at 75. Had Sullivan wanted the 30-day removal period to begin upon the filing of the complaint, he could have simply alleged in the complaint a specific amount. The course of action that National took—seeking clarification through a request for admissions served on the same day as the answer and motion to dismiss—was the course of action a party should take in response to a less-than-clear complaint to avoid a possibly unwarranted removal and imposition of attorney's fees and costs under 28 U.S.C. § 1447.

Even though National intended its request for admissions to clarify whether there was a basis for removal, they do not serve that purpose given inartful wording:

---

[13]Florida's pleading standard requires that all contracts "on which action may be brought … be incorporated in or attached to the pleading." Fla. R. Civ. P. 1.130(a). That standard serves to apprise defendants of particulars so they can plead with greater certainty. *Amiker v. Mid-Century Ins. Co.*, 398 So. 2d 974, 975 (Fla. 1st DCA 1981).

Whether reference to a policy number in a complaint incorporates the policy by reference under that pleading standard is unclear. Regardless, the issue is not whether the complaint could survive a motion to dismiss; the issue is whether the complaint triggered the 30-day removal period. For that issue, the language of subsection (b)(3) ("if the case *stated by the initial pleading* is not removable") and the policy underlying the bright-line rule (promotion of judicial efficiency through avoidance of mini trials about what defendants actually possessed) dictate consideration of the complaint but not the policy it does not attach or quote. Were it otherwise, a court could confront an undesirable mini-trial over whether a defendant actually possessed the document.

citizenship admissions prefaced with, "At all times relevant to the [2014] accident," Doc. 1-1, instead of, "at the time of the complaint and at present," *see Texas Wool*, 175 F.2d at 838, and amount-in-controversy admissions concerning $75,000 "or more," Doc. 1-1, instead of "more than" $75,000, *see* 28 U.S.C. § 1332(a) ("the matter in controversy [must] *exceed*[] the sum or value of $75,000") (emphasis added); *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1071 (C.D. Cal. 2012) ("To the extent their claims 'equal' $75,000, they do not allege an amount in controversy that is sufficient to give rise to diversity jurisdiction."); *McCloud v. Reilly*, No. 17-11774, 2018 WL 1603504, at *2 (E.D. La. Apr. 3, 2018) (unpublished) ("[T]his admission does not establish that the amount in controversy at the time of removal exceeded $75,000 because the admission is also consistent with an amount in controversy that equals $75,000, which is insufficient to support removal."). Without those defects, the November 15, 2017, service of the admissions would have been the earliest date the 30-day removal period would begin to run, making the December 12, 2017, notice of removal timely. Remand based on untimeliness therefore is unwarranted.

Sullivan alternatively claims waiver—a litigation-based procedural defect. The Eleventh Circuit has recognized that "litigating on the merits" in state court may operate as a waiver of the right to remove a state case to federal court. *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246 (11th Cir. 2004). Under the waiver principle, a "state court defendant may lose or waive the right to remove a case to a federal court by taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court." *Id.* (quoted authority omitted).

"Whether [a] state court defendant had waived his right to remove based on active participation must be made on a case-by-case basis." *Id.* (internal quotation marks and quoted authority omitted). "Waiver will not occur … when the defendant's participation in the state action has not been substantial or was dictated by the rules

16

of that court." *Id.* (quoted authority omitted). Nor will waiver occur just because a defendant filed in state court a motion to dismiss a complaint instead of an answer. *Bailey v. Janssen Pharm., Inc.*, 536 F.3d 1202, 1209 n.10 (11th Cir. 2008); *see Cogell v. Wyeth*, 366 F.3d 1245, 1249 (11th Cir. 2004) (holding the defendant did not waive his right to remove by merely filing in state court a motion to dismiss the complaint; the defendant did not schedule a hearing on the motion and filed a notice of removal before a ruling on the motion); *Yusefzadeh*, 365 F.3d at 1246–47 (same).

Waiver must be clear and unequivocal. *See Snapper v. Redan*, 171 F.3d 1249, 1261 (11th Cir. 1999) (explaining in dictum, "In the context of litigation-based waivers, the clear and unequivocal standard makes sense. Otherwise, parties would be put in the difficult position of, on the one hand, not taking any action in state court in order to preserve definitively the right to remove and, on the other hand, running the risk of a default judgment unless they take steps to defend the action in state court.").

Federal Rule of Civil Procedure 81(c), which makes re-pleading unnecessary in removed actions, contemplates filing a responsive pleading before removal. *Yusefzadeh*, 365 F.3d at 1246. Under Florida Rule of Civil Procedure 1.140, a defendant must respond to a complaint within 20 days of service.

Contrary to Sullivan's argument, National did not waive its right to removal by moving to dismiss the bad-faith claim instead of answering that claim as National had done with the UM coverage claim. The response was reasonable considering that a bad-faith claim can multiply discovery at the outset (indeed, Sullivan appears to have begun to seek discovery beyond UM coverage at the outset),[14] and National

---

[14]The Florida Supreme Court has held "that in connection with evaluating the obligation to process claims in good faith … all materials, including documents, memoranda, and letters, contained in the underlying claim and related litigation file material that was created up to and including the date of resolution of the underlying disputed matter and pertain in any way to coverage, benefits, liability, or damages, should … be produced in a first-party bad faith action." *Ruiz*, 899 So. 2d at 1129–30.

needed responses to its request for admissions to jurisdictional facts before it could determine if removal was proper. Importantly, it was Sullivan's counsel—not National's counsel—who specially set the hearing on the motion to dismiss, and he did so before admitting the jurisdictional facts. Doc. 1-2 at 3, 18–22. Although the state court ruled on the motion to dismiss before National filed the notice of removal, Doc. 1-2 at 3, the state court did so only a day after Sullivan admitted the jurisdictional facts—insufficient time to infer National was waiting on the ruling to assess whether to remove the case. Under these circumstances, it cannot be said that National took "substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court." *See Yusefzadeh*, 365 F.3d at 1246 (quoted).

One matter remains, not addressed by the parties but concerning the Court's subject matter jurisdiction. Nothing in the record establishes that Sullivan was a Florida citizen when the state case was initiated and when the notice of removal was filed or that the amount in controversy exceeded $75,000 at those times.

Federal courts have an independent obligation to determine the existence of subject matter jurisdiction, even when no party challenges it. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). And federal courts cannot assume jurisdiction exists. *Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 94 (1998).

Under 28 U.S.C. § 1653, which must be construed liberally, *Toms v. Country Quality Meats, Inc.*, 610 F.2d 313, 316 (5th Cir. 1980), "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts," 28 U.S.C. § 1653. "If a party fails to specifically allege citizenship in [the] notice of removal, the district court should allow that party to cure the omission[.]" *Corp. Mgmt.*, 561 F.3d at 1297 (internal quotation marks omitted). "[W]here subject matter jurisdiction exists and any procedural shortcomings may be cured by resort to § 1653, [there is] no valid reason for the court to decline the exercise of jurisdiction." *Id.*

18

Here, National should be permitted to amend the notice of removal to unequivocally establish diversity jurisdiction by presenting what appears to be undisputed but cannot be assumed: the parties' diverse citizenship and an amount in controversy exceeding $75,000 when the state case was initiated (August 7, 2017) and removed (December 12, 2017).

### Recommendation[15]

I recommend **denying** Sullivan's motion to remand, Doc. 13, and **directing** National to amend the notice of removal to unequivocally state jurisdictional facts within 45 days from any order adopting the recommendations.

**Entered** in Jacksonville, Florida, on April 17, 2018.

_____

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:   The Honorable Timothy J. Corrigan
     Counsel of record

---

[15] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.